Larry L. EPPS et al.

v.

Mark A. LEVINE, etc.

Civ. A. Nos. M–73–525, M–73–341.

United States District Court,
D. Maryland.

Sept. 11, 1979.

Richard G. Fishman, Richard L. North and Mary S. Elcano, Baltimore, Md., for plaintiffs.

John P. Stafford, Jr., Asst. Atty. Gen., Henry J. Frankel, James G. Klair, George L. Russell, Jr., William Hughes and Glenn M. Grossman, Baltimore, Md., J. Carroll Holzer, Thomas R. Kane, County Sol., Towson, Md., for defendants.

MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

I

The plaintiffs in this class action are pre-trial detainees who are awaiting trial in Maryland Courts and who have been or may be transferred from a county or city jail to the Maryland Penitentiary. The defendants are the Commissioner of the Maryland Division of Correction and the class of all Maryland jail wardens. Plaintiffs seek a declaratory judgment and permanent injunction *restraining* the state from imposing certain conditions of confinement upon the plaintiff class.

Pending before the Court are the plaintiffs' motion for summary judgment and defendants' cross-motion for summary judgment. The parties have agreed upon the relevant facts.

The plaintiffs challenge, under 42 U.S.C. § 1983, the conditions of confinement imposed upon pre-trial detainees who are held in the Maryland Penitentiary. Specifically plaintiffs challenge the conditions in "C–Dormitory" where all pre-trial detainees located at the Penitentiary are housed (Stipulation No. 1; hereinafter "Stip. ___", Paper No. 40).

C–Dormitory is a segregation area where both pre-trial and convicted prisoners are housed for maximum security. The dormitory is divided into individual cells which are approximately 10 feet long and 5 feet wide (50.7 square feet). Most cells are occupied by two persons. General population convicts are mixed with pre-trial detainees within C–Dormitory's cells.

C–Dormitory inmates spend almost 24 hours a day in their cells with the exception of visits (7 per month plus unlimited visits by inmate's attorney), showers (an average of 2 per week), exercise time (one hour per week) and trips to the classification center, hospital or court. Their meals are served in their cells (served in cups passed through the cell bars) and they have virtually no access to educational, vocational, recreation-

al or religious programs. They may not visit the penitentiary library, but the librarians do tour C–Dormitory twice per month to take specific requests.[1]

Pre-trial detainees are transferred to the Maryland Penitentiary pursuant to a state court order under Art. 27 § 690(f) of the Annotated Code of Maryland. While individuals awaiting trial are sent from the local county or city jails to the Penitentiary for a variety of reasons, the majority are sent there to provide greater security control over them than is available at the local jail.[2]

## II

The legal standards which must be applied in examining the Constitutional propriety of challenged conditions of confinement imposed upon pre-trial detainees was recently delineated by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Bell*, the court held that the conditions of confinement[3] imposed upon pre-trial detainees at New York City's Metropolitan Correctional Center (MCC) did not violate the Constitutional protections of due process and equal protection. In so ruling, the Court stated that the test which must be applied in ruling upon this type of question is "whether those conditions [of confinement] amount to punishment of the detainee." 441 U.S. at 535, 99 S.Ct. at 1872. In expounding upon this test the Court stated,

"... A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. . . . Absent a showing of expressed intent to punish on the part of detention officials, that deter-

mination generally will turn on '[w]hether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' '. . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " (citations and footnote omitted). 441 U.S. at 538 539, 99 S.Ct. at 1873–1874.

Discussing the "other legitimate governmental purpose" of maintaining institutional security which is often referred to by jail officials as the reason for specific restrictive policies, the court stated:

"The Government also has legitimate interest that stem from its need to manage the facility in which the individual is detained. These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up at trial. For example, the Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees. Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." (footnote omitted) 441 U.S. at 540, 99 S.Ct. at 1874.

Further expounding upon this consideration, the Court stated in a footnote:

---

1. *See,* "Statement of Material Facts as to Which there is no Genuine Dispute" (Paper No. 29) and "Stipulation of Facts" (Paper No. 40). For a more complete description of "C–Dormitory", *see also, Nelson v. Collins,* 455 F.Supp. 727, 731 (D.Md.1978).

2. Facts (Paper 29), Paragraphs Nos. 23–40. This court has previously ruled that transfer standards and procedures do not violate the due process safeguards of the Fourteenth

Amendment. *Epps v. Levine,* 457 F.Supp. 561 (D.Md.1978).

3. The complained of conditions consisted of:
   a). double-bunking
   b). Publisher-only rule
   c). body-cavity searches
   d). prohibition against the receipt of packages
   e). room-search rule

"In determining whether restrictions or conditions are reasonably related to the government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to those considerations, courts should ordinarily defer to their expert judgment in such matters.' " (citations omitted) 441 U.S. at 540 fn. 23, 99 S.Ct. at 1875 fn. 23.

Unless this court finds that the conditions imposed upon pre-trial detainees in the Maryland Penitentiary are for punitive purposes or clearly in excess of the legitimate governmental interest of maintaining security and order at the various jail and prison facilities involved, then the defendants must prevail.

### III

Plaintiffs complain of five basic conditions at the Penitentiary which the court will now examine.

#### A. Double Celling

Pre-trial detainees in the Maryland Penitentiary are generally placed two in a cell (Stip. No. 5). The cells are 5'3" × 9'8" (50.7 square feet) (Stip. No. 4).[4] While housing two pre-trial detainees—or any two prisoners for that matter—in a cell of such a small size might not be desirable, there is no evidence in this record that "double celling" of pre-trial detainees is done for punitive purposes. Pre-trial detainees are

4. In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) the cells involved had approximately 75 feet of total floor space. 441 U.S. at 541, 99 S.Ct. 1875.

5. In *Bell v. Wolfish, supra*, the Court recognized that conditions or restrictions that do not amount to punishment might "otherwise violate the Constitution." 441 U.S. at 536, 99 S.Ct. 1873. Therefore, if conditions are such that they constitute "cruel and unusual punishment" in violation of the Eighth Amendment,

transferred to the Penitentiary for medical or security reasons and not as punishment for the crimes that they are alleged to have committed and for which they are awaiting trial. Neither is there any evidence that once at the Penitentiary, the pre-trial detainees are placed in double cells for punishment, rather than in an attempt to accommodate existing facilities to the demand of increasing population.

In the absence of a punitive purpose for "double celling", the defendants must prevail on this issue under the teaching of *Bell v. Wolfish, supra*, unless the practice in some other way infringes upon Constitutional guarantees.[5]

To the extent that such "double celling" at the Maryland Penitentiary is alleged to result in conditions which violate the Eighth Amendment's prohibition on "cruel and unusual punishment", that claim was presented to Judge Blair of this court in *Nelson v. Collins*, 455 F.Supp. 727 (D.Md. 1978), *affirmed in part and remanded*, 588 F.2d 1378 (4th Cir. 1978). Since the certified class in that case covers all inmates at the Maryland Penitentiary, including the present plaintiffs, this court will defer to Judge Blair's decision.

#### B. Time Spent in Cell

As previously stated, pretrial detainees at the Penitentiary are allowed to leave their cells only for visits[6], showers[7], one hour per week to exercise[8], and trips to the classification center, the hospital, and court. Otherwise, the pre-trial detainees spend virtually twenty-four hours per day in their 5 × 10 cells. They are not allowed out to eat, nor for recreation or religious services.

they can provide the basis for relief to pre-trial detainees as well as to sentenced inmates.

6. Maximum permitted of seven per month in addition to attorney visits.

7. C–Dormitory inmates receive an average of two showers per week.

8. The exercise consists of walks on the tier walkways or on the "flats" of C–Dormitory.

Nothing in the record suggests the presence of an "expressed intent to punish on the part of detention facility officials,"[9] yet in order to uphold this kind of onerous restriction on the freedom of movement of inmates, there must be some "legitimate governmental objective" which is served by the restriction if the court is not to infer a punitive intent. However, the burden is on the plaintiffs to show that no valid *governmental* purpose exists. "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to those considerations, courts should ordinarily defer to their expert judgment in such matters". *Bell v. Wolfish*, 441 U.S. at 540 fn. 23, 99 S.Ct. at 1875 fn. 23.

In the present state of the record, no such "substantial evidence" has been presented. This court could speculate that this kind of 24 hour a day cell restriction goes beyond any legitimate governmental purpose of maintaining jail security[10]. It is not the province of this court, however, to base its decision on speculation. Absent a showing by the plaintiffs that such restrictions are "exaggerated responses" by the defendants, to prison security or other problem or that such restrictions are not rationally connected to a legitimate governmental objective, then plaintiffs cannot prevail. Because the court is of the opinion that such a showing could conceivably be made by the plaintiffs and the decision of the Supreme Court definitely establishing the standard to be applied was not announced until after the briefing herein, the court will grant plaintiffs 60 days within which to submit additional evidence and memoranda on this issue.

### C. Psychological and Psychiatric Care

Plaintiffs complain of a complete lack of psychological or psychiatric services. To the extent that this argument is based upon a "cruel and unusual punishment theory", the court believes that the issue was decided by Judge Blair in *Collins*, 455 F.Supp. at 734. There is no evidence in the record that could be interpreted to justify an inference that such lack of psychiatric care is being used to punish the pre-trial detainees. As to this issue, summary judgment will be granted for the defendants.

### D. Other Restrictions

As to the issues of exercise, library and shower privileges, there again is no evidence of an expressed intent to punish on the part of prison officials. These issues are sufficiently related to the issue of time spent in the cell, however, to convince the court that judgment should be reserved on them until an additional sixty days is given the plaintiffs to demonstrate, if such is the case, that the policies challenged are not rationally related to a legitimate governmental objective or are clearly a gross overreaction to legitimate concerns.

### IV

In conclusion, the court finds that at present the plaintiffs have not met the rigorous *Bell v. Wolfish, supra,* standard. As to the "double celling" and mental care issues, judgment will be entered for the defendants. As to the time-in-cell, exercise, shower and library issues, the plaintiffs will be granted leave to file within sixty days additional affidavits and memoranda. If

---

9. In *Bell v. Wolfish*, 441 U.S. at pp. 537 538, 99 S.Ct. at p. 1873.

10. In *Bell v. Wolfish, supra*, the Supreme Court was careful to point out that the pre-trial detainees in that case were in their cells (the cells were approximately 75 sq. feet in size as opposed to the Maryland Penitentiary's 50 sq. feet) only at night (11 p. m. to 6:30 a. m.) and for brief periods during the afternoon and evening head counts. 441 U.S. 541, 99 S.Ct. 1875. While the Penitentiary's conditions for detainees do not amount to "loading a detainee

with chains and shackles and throwing him in a dungeon", alluded to by the Supreme Court as unjustifiable conditions, 441 U.S. at 539 fn. 20, 99 S.Ct. at 1874 fn. 20, the time here required for pre-trial detainees to spend in their cells might constitute such a harsh condition, in the absence of a legitimate governmental objective which cannot be satisfied by an alternative and less harsh method, as to support a conclusion that the purpose for which it has been imposed is to punish.

the plaintiffs or the defendants desire so to do, additional discovery may be undertaken for a period of forty five days from this date. Defendants will also be allowed fifteen days to file affidavits and memoranda in response to any materials filed by plaintiffs.